CHRISTOPHER JUSTIN ROBINSON,

Plaintiff,

v.                                                    Case No. 26-CV-1006

JAIL ADMINISTRATOR CAROL et al.,

Defendants.

## SCREENING ORDER

Plaintiff Christopher Justin Robinson, who is currently representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. On June 11, 2026, the Court screened and dismissed the original complaint but allowed Plaintiff to file an amended complaint. Plaintiff filed an amended complaint on July 6, 2026. The Court will now screen Plaintiff's amended complaint.

### SCREENING OF THE AMENDED COMPLAINT

District courts are permitted to screen every complaint, regardless of a plaintiff's fee status. 28 U.S.C. § 1915(e)(2)(B); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing,

as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE AMENDED COMPLAINT

In screening a complaint, the Court accepts the allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) (citation omitted). The Court notes, however, that the allegations in the amended complaint are just that, allegations; they are Plaintiff's version of the events that have purportedly occurred. With this in mind, the Court will summarize Plaintiff's allegations as presented in the amended complaint.

At all times relevant, Plaintiff was housed at the Oconto County Jail. On March 18, 2022, Plaintiff told Correctional Officer John Doe 1 that he was not doing well mentally and wanted to speak with someone in crisis. CO John Doe 1 had Plaintiff talk to someone over the phone that

2

was not licensed to do crisis work. Two days later, Plaintiff attempted to take his life by hanging himself in his cell with his sheets. Plaintiff was taken to the Winnebago Mental Health Institute. On March 23, 2022, Plaintiff was transported back to the Oconto County Jail. (ECF No. 5 at 6.)

Plaintiff was placed in an observation room for at least one week before he was transferred to a regular cell. Shortly thereafter, Plaintiff had a breakdown. Plaintiff self-harmed to the point where he had bruising on his ribs and face. Plaintiff asked to be put in a restraint or safety cell. CO John Doe 2 moved Plaintiff to a booking cell, but Plaintiff continued to harm himself. After Plaintiff jumped off the bed and slammed his head on the wall, CO Jane Doe 1 came to talk to Plaintiff. Plaintiff begged to be put in a restraint chair. CO Jane Doe 1 improperly put Plaintiff in a restraint chair by cuffing Plaintiff behind his back. Plaintiff was only in the restraint chair for 20 minutes, and he could not talk to mental health staff during that time. After Plaintiff was removed from the restraint chair, CO Jane Doe 1 put Plaintiff back into a booking cell, and Plaintiff went to sleep. (*Id.*)

When Plaintiff woke up, Plaintiff continued self-harming. He did not receive his medications properly, and he smeared feces and urinated on the floor in his cell. Instead of helping Plaintiff, CO Jane Doe 2 told Plaintiff he would wear himself out. In the morning, crisis came to talk to Plaintiff. Plaintiff was sent to Winnebago Mental Health Institute on April 13, 2022. Plaintiff returned to the Oconto County Jail on April 15, 2022. Plaintiff asserts that Jail Administrator Carol failed to properly train her staff regarding Department of Corrections administrative regulations. (*Id.*)

### ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this

3

deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).  Plaintiff asserts that he was denied medical care and protection from self-harm.  It is unclear from the amended complaint whether Plaintiff was a pretrial detainee or convicted inmate while he was incarcerated at the Oconto County Jail.  For the purpose of screening the amended complaint, the Court will assume he was a pretrial detainee and analyze his claims under the Fourteenth Amendment.

Under the Fourteenth Amendment's objective unreasonableness standard, once a pretrial detainee shows that a jail official's failure to act was purposeful and intentional, the sole question is an objective one: Did the defendant "take reasonable available measures to abate the risk of serious harm?" *Pittman v. Madison Cty.*, 108 F.4th 561, 566, 572 (7th Cir. 2024).  "The objective reasonableness of a decision to deny medical care . . . does not consider the defendant's subjective views about risk of harm and necessity of treatment.  Instead, the proper inquiry turns on whether a reasonable [jail official] in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care." *Id.* at 570.  Thus, to state a claim under the Fourteenth Amendment standard, a plaintiff must allege that (1) the defendant acted purposefully, knowingly, or perhaps even recklessly, without regard to his subjective awareness of the risk of inaction and (2) the defendant's response to the medical condition was objectively unreasonable. *Id.* at 570–72.

Plaintiff alleges that, on March 18, 2022, he told CO John Doe 1 that he was not doing well mentally and wanted to speak with someone in crisis.  CO John Doe 1 had Plaintiff talk to someone over the phone that was not licensed to do crisis work.  Two days later, Plaintiff attempted to take his life by hanging himself in his cell with his sheets.  No reasonable jury could conclude that CO

4

John Doe 1's conduct was objectively unreasonable.  After Plaintiff told CO John Doe 1 that he was not doing well mentally, CO John Doe 1 had Plaintiff talk to someone over the phone.  Even though Plaintiff alleges that the individual he spoke to was not licensed to do crisis work, he does not allege that the individual did not provide him with medical care.  Plaintiff does not allege that he had any further interactions with CO John Doe 1.  Plaintiff fails to state a claim against CO John Doe 1.  Therefore, CO John Doe 1 will be terminated as a defendant.

Plaintiff also fails to state a Fourteenth Amendment claim against CO Jane Doe 1.  Plaintiff alleges that CO Jane Doe 1 came to talk to Plaintiff after he harmed himself.  She put him in a restraint chair for 20 minutes before returning him to his cell, and then Plaintiff fell asleep.  The complaint contains no allegations from which the Court can infer that, during CO Jane Doe 1's limited interaction with Plaintiff, her response to Plaintiff's condition was objectively unreasonable.  *See id.*  Although Plaintiff asserts that CO Jane Doe 1 "improperly" placed him in the restraint chair, a violation of jail policy does not violate the Constitution.  *See Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020).  In short, CO Jane Doe 1 will be terminated as a defendant.

Next, Plaintiff asserts that he self-harmed to the point where he had bruising on his ribs and face.  Plaintiff asked to be put in a restraint or safety cell, but CO John Doe 2 moved Plaintiff to a booking cell, where Plaintiff continued to harm himself.  The next day, Plaintiff asserts that he continued self-harming, he did not receive his medications properly, and he smeared feces and urinated on the floor in his cell.  Instead of helping Plaintiff, CO Jane Doe 2 told Plaintiff he would wear himself out.  Plaintiff may proceed on a Fourteenth Amendment claim against CO John Doe 2 and CO Jane Doe 2 based on his allegations that CO John Doe 2 and CO Jane Doe 2 did not properly respond to his self-harming behavior.

5

Plaintiff may not proceed on a failure to train claim against Jail Administrator Carol, however. In some circumstances, plaintiffs can sue municipalities for constitutional violations under § 1983. Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), municipalities may be liable for an employer's conduct if the employee injured the plaintiff in execution of an official policy, custom, or widespread practice. A failure to train is an official custom or policy for purposes of § 1983 "only where the failure to train amounts to deliberate indifference to the rights of persons with whom [they] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Liability attaches "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by . . . policymakers." *Id.* at 388–89 (citation omitted). "[I]t may be difficult to tell the difference between inadvertence and a policy to omit something." *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017). Without an allegation of a deliberate or conscious choice, a municipality's failure to train is not a "policy or custom" actionable under § 1983. *City of Canton*, 489 U.S. at 389.

Plaintiff alleges that Jail Administrator Carol failed to properly train her staff regarding Department of Corrections administrative regulations. The amended complaint does not contain any allegations that Jail Administrator Carol made a deliberate policy choice among various alternatives regarding training. In addition, a single incident of allegedly improper medical care does not support an inference that there was a failure to train. The official policy requirement "distinguish[es] between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). There is no basis upon which a reasonable factfinder could infer that the single incident alleged in the amended complaint resulted from an official policy, widespread custom, or the act of a final

6

policymaker. *See Wilson v. Cook Cty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice."). Accordingly, Plaintiff fails to state a *Monell* claim against Jail Administrator Carol and she will be terminated as a defendant.

Because Plaintiff does not know the correctional officer's names, the Court will add Oconto County Sheriff Todd Skarban as a defendant for the limited purpose of helping Plaintiff identify the John/Jane Doe defendants. *See Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 556 (7th Cir. 1996). Sheriff Skarban does not have to respond to the amended complaint. After Sheriff Skarban's attorney files an appearance in this case, Plaintiff may serve discovery requests upon Sheriff Skarban (by mailing the requests to his attorney at the address in the notice of appearance) to obtain information that will help him identify the John/Jane Doe defendants.

For example, Plaintiff may serve interrogatories (written questions) under Federal Rule of Civil Procedure 33 or document requests under Federal Rule of Civil Procedure 34. Because Plaintiff does not state a claim against Sheriff Skarban, Plaintiff's discovery requests must be limited to information or documents that will help him learn the John/Jane Doe defendants' names. Plaintiff may not ask Sheriff Skarban about any other topic, and Sheriff Skarban is under no obligation to respond to requests about any other topic.

After Plaintiff learns the name of the John/Jane Doe Defendants, he should file a motion to substitute the correctional officers' names for the John/Jane Doe placeholders. Generally, a plaintiff must file an amended complaint when adding a defendant, but because Plaintiff is *pro se* and his allegations against the correctional officers are clearly stated in the amended complaint, the Court will allow him to substitute the correctional officers' names for the John/Jane Doe

7

placeholders. The Court will dismiss Sheriff Skarban as a defendant once Plaintiff identifies the correctional officers' names. After the correctional officers have an opportunity to respond to Plaintiff's amended complaint, the Court will set a deadline for discovery. During discovery, Plaintiff may serve discovery requests to obtain the information he believes he needs to prove his claim.

Plaintiff must identify the name of the John/Jane Doe defendants within sixty days of Sheriff Skarban's attorney filing a notice of appearance. If he does not or does not explain to the Court why he is unable to do so, the Court may dismiss this case based on Plaintiff's failure to diligently pursue it. *See* Civil L.R. 41(c).

**IT IS THEREFORE ORDERED** that John Doe 1, Jane Doe 1, and Jail Administrator Carol are **TERMINATED** as defendants in this case.

**IT IS FURTHER ORDERED** that Oconto County Sheriff Todd Skarban shall be added as a Defendant for the limited purpose of helping Plaintiff identify the name of the John/Jane Doe defendants. The clerk's office will update the docket accordingly.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the amended complaint and this order upon Oconto County Sheriff Todd Skarban pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

8

**IT IS FURTHER ORDERED** that Sheriff Skarban does not have to respond to the amended complaint; however, he shall respond to discovery requests that Plaintiff serves in an effort to identify the John/Jane Doe defendants' names. Sheriff Skarban does not have to respond to discovery requests about any other topic.

**IT IS FURTHER ORDERED** that Plaintiff must identify the John/Jane Doe defendants' names within 60 days of Sheriff Skarban's attorney filing a notice of appearance. If Plaintiff does not identify the John/Jane Doe defendants' name by the deadline or advise the Court why he is unable to do so, the Court may dismiss this case based on his failure to diligently prosecute it.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin on July 15, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge

9